KEVIN V. RYAN (CSBN 118321)
United States Attorney
JAY R. WEILL (CSBN 75434)
Assistant United States Attorney
Chief, Tax Division
CYNTHIA STIER (DCBN 423256)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7000
Facsimile: (415) 436-6758
Email: cynthia.stier@usdoj.gov

ANTON L. JANIK, JR.
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 305-2558
Facsimile: (202) 307-0054
Email:Anton.L.Janik@usdoj.gov

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF TAX LIABILITIES OF: <br><br> JOHN DOES, United States taxpayers who, during the years ended December 31, 1999 through December 31, 2004, had signature authority over bank accounts at or over MasterCard, VISA, or American Express cards issued by, through, or on behalf of banks or other financial institutions in Anguilla, Antigua and Barbuda, Aruba, Bahamas, Barbados, Belize, Bermuda, British Virgin Islands, Cayman Islands, Cook Islands, Costa Rica, Cyprus, Dominica, Gibraltar, Grenada, Guernsey/Sark/Alderney, Hong Kong, Isle of Man, Jersey, Latvia, | Case No. <br><br> **MEMORANDUM IN SUPPORT OF *EX PARTE* PETITION FOR LEAVE TO SERVE "JOHN DOE" SUMMONS** |

| Lichtenstein, Luxembourg, Malta, Nauru, | ) |
| Netherlands Antilles, Panama, Samoa, St. | ) |
| Kitts and Nevis, St. Lucia, St. Vincent and the | ) |
| Grenadines, Singapore, Switzerland, Turks | ) |
| and Caicos, and Vanuatu | ) |

The United States of America respectfully submits the following Memorandum in support of its *Ex Parte* Petition for Leave to Serve "John Doe" Summons:

## INTRODUCTION

This is an *ex parte* proceeding brought by the United States of America, pursuant to Sections 7609(f) and (h) of the Internal Revenue Code (26 U.S.C.), for leave to serve an Internal Revenue Service "John Doe" summons upon PayPal, Inc. Section 7609(f) provides that a summons which does not identify the person with respect to whose liability it is issued, may be served only after a court proceeding in which the United States establishes certain factors. This type of summons is commonly known as a "John Doe" summons. Section 7609(h)(1) provides that a district court in which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceeding brought under Section 7609(f). Section 7609(h)(2) provides that any determinations required to be made under Section 7609(f) shall be made *ex parte* and shall be made solely on the petition and supporting affidavits.

## QUESTIONS PRESENTED

Whether, as required by Section 7609(f), the United States of America has demonstrated:

(1) that the "John Doe" summons which the Internal Revenue Service desires to serve upon PayPal, Inc. relates to the investigation of an ascertainable group or class of persons;

(2) that there is a reasonable basis for believing that such group or class of persons may fail or may have failed to comply with any provision of any internal revenue law; and

(3) that the information sought to be obtained from the examination of the records or testimony (and the identities of the persons with respect to whose liability the summons is issued) is not readily available from other sources.

**DISCUSSION**

The Internal Revenue Service is conducting an investigation to determine the correct federal income tax liabilities, for the years ended December 31, 1999 through December 31, 2004, of United States taxpayers[1] who had signature authority over bank accounts or over MasterCard, VISA, or American Express cards issued by, through, or on behalf of banks or other financial institutions in certain offshore jurisdictions.[2] The foreign countries named in this suit are those that have bank secrecy laws which permit account holders to avoid the disclosure of income and assets which are subject to federal income taxes owed to the United States.

In furtherance of this investigation, the Internal Revenue Service is requesting authorization to serve a "John Doe" summons to PayPal, Inc. Founded in 1998, PayPal, Inc. is an internet-based money transfer service which enables any person with an email address and a

---

[1] The term "United States taxpayer" refers to all persons subject to tax in the United States. All United States citizens and resident aliens are liable for federal income taxes on income received from sources within or without the United States; nonresident aliens are only liable for taxes on income from sources within the United States. Pursuant to Section 7701(b)(1), an alien may be treated as a resident for the purposes of income taxation if he (1) is a lawful permanent resident of the United States, (2) meets the substantial presence test (this is an objective test in which the number of days the alien is present in the United States are counted), or (3) makes an election to be treated as a resident. *See Lujan v. Comm'r*, T.C. Memo 2000-365, 2000 WL 1772503 (2000).

[2] These jurisdictions are Anguilla, Antigua and Barbuda, Aruba, Bahamas, Barbados, Belize, Bermuda, British Virgin Islands, Cayman Islands, Cook Islands, Costa Rica, Cyprus, Dominica, Gibraltar, Grenada, Guernsey/Sark/Alderney, Hong Kong, Isle of Man, Jersey, Latvia, Lichtenstein, Luxembourg, Malta, Nauru, Netherlands Antilles, Panama, Samoa, St. Kitts and Nevis, St. Lucia, St. Vincent and the Grenadines, Singapore, Switzerland, Turks and Caicos, and Vanuatu.

bank account or a MasterCard, VISA, or American Express card issued by, through, or on behalf of a bank, to transfer money to any person with an email address.[3]

To transfer money, a user first must open a PayPal, Inc. account. An account may be opened either by logging onto the PayPal, Inc. website and selecting the menu option "sign up now," or when conducting an Internet payment transaction with someone who is already a member. In either case, the applicant provides certain information essential to the processing of financial transactions, including identifying information for existing bank accounts and credit card accounts that the applicant expects to use as the source of funds for purchase transactions and as the destination of funds received in the PayPal, Inc. account. For bank accounts, this information includes routing numbers needed by PayPal, Inc. to identify and transact business with the applicant's bank and, for credit card accounts, the information includes the card number.[4]

Transfers may be initiated at the PayPal website, or at an affiliated merchant's website. To initiate a monetary transfer at the PayPal, Inc. website, a sender logs in to his or her account and enters the recipient's email address and the payment amount, and selects a funding source— credit card, bank account or a balance already resident in the PayPal, Inc. account. To make a payment at a merchant's website, a sender selects an item for purchase, confirms the payment information, and enters his email address and password to authorize the payment. PayPal, Inc. debits the money from the sender's PayPal, Inc. balance, credit card or bank account and

---

[3] The PayPal, Inc. service is often used to pay for goods ordered over the internet, either through merchant or auction websites. Since 2002, PayPal, Inc. has been owned by the online auction website eBay Inc.

[4] This information may be verified by PayPal, Inc. by making deposits or charges in nominal amounts to the bank accounts and credit cards, respectively, which the applicant is asked to confirm by e-mail.

**MEMORANDUM IN SUPPORT OF *EX PARTE* PETITION FOR LEAVE TO SERVE "JOHN DOE" SUMMONS**
4

instantly credits it to the recipient's PayPal, Inc. balance. When a PayPal, Inc. sender makes an email payment to a recipient who does not yet have a PayPal, Inc. account, the recipient follows a link in the payment notification email to register with PayPal, Inc. and gain access to the funds. Payment recipients may use their funds to make payments to others, leave the funds in their PayPal, Inc. account and earn a money market rate of return, or withdraw the funds at any time by requesting a bank account transfer or a check delivered by mail or by using the PayPal, Inc. ATM/debit card.

Because the elements necessary to transfer money require only two email addresses attached to two bank accounts and/or credit or debit cards, PayPal Inc.'s structure not only allows persons with monies held in a foreign account to purchase goods and services, it also allows a person with assets secreted in a foreign country to repatriate them to their own domestic bank account without going through traditional banking methods such as a bank-initiated wire transfer.

This case is not only important to the administration of the tax laws, it may have significant impact upon the public fisc: the Treasury Inspector General for Tax Administration reports that over $40 billion dollars in federal tax revenue is lost every year due to the use of credit cards linked to accounts held in foreign tax havens.[5] This memorandum explains how the proposed summons meets the requirements for issuance of this "John Doe" summons, and identifies other recent cases related to this investigation where courts have authorized the use of "John Doe" summonses.

---

[5] *See* http://www.treas.gov/tigta/congress/congress_07212004.pdf, at 4.

## I. THE INTERNAL REVENUE SERVICE ADMINISTRATIVE SUMMONS MEETS THE REQUIREMENTS FOR ISSUANCE OF THIS "JOHN DOE" SUMMONS

Section 7601 of the Internal Revenue Code requires the Secretary of the Treasury to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." Section 7602 authorizes the Secretary to summon records and testimony for that purpose. Specifically, Section 7602 authorizes the Secretary

> [f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax … [t]o summon … any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax …, or any other person the Secretary may deem proper, to appear … and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

Section 7602 is the Internal Revenue Service's principal information-gathering authority, and, accordingly, the courts have broadly construed it in light of its intended purpose of furthering the effective conduct of tax investigations. Thus, the courts have repeatedly rejected attempts to circumscribe or thwart the effective exercise of the Internal Revenue Service's summons power. *See, e.g., United States v. Stuart*, 489 U.S. 353, 360 (1989); *United States v. Euge*, 444 U.S. 707, 715-16 (1980); *United States v. Bisceglia*, 420 U.S. 141, 150 (1976); *Couch v. United States*, 409 U.S. 322, 337 (1973).

In *Bisceglia*, the Supreme Court held that Sections 7601 and 7602 empowered the Internal Revenue Service to issue a "John Doe" summons to a bank to discover the identity of a person who had engaged in certain bank transactions. This authority was subsequently explicitly codified in Section 7609(f) of the Internal Revenue Code, as added by the Tax Reform Act of 1976. Section 7609(f) provides as follows:

> Any summons ... which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that –
>
> > (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
> >
> > (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
> >
> > (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The "John Doe" summons for which the United States seeks authorization in the instant case meets those three requirements. First, it relates to the investigation of an ascertainable group or class of persons – United States taxpayers who, during the years ended December 31, 1999 through December 31, 2004, had signature authority over bank accounts or MasterCard, VISA, or American Express payment cards issued by, through, or for banks or other financial institutions in certain offshore jurisdictions. Second, there is a reasonable basis for believing that such group or class of persons may fail, or may have failed, to comply with one or more provisions of the internal revenue laws. Finally, the information sought to be obtained from the examination of the records or testimony (and the identity of the persons with respect to whose tax liabilities the summons has been issued) is not readily available from other sources.

### A. The Investigation Is Related to an Ascertainable Class

As required by Section 7609(f)(1), the group or class of persons to be investigated here is ascertainable – United States taxpayers who, during the years ended December 31, 1999 through December 31, 2004, had signature authority over bank accounts or MasterCard, VISA or American Express payment cards (including credit, debit, and charge cards) issued by, through,

or on behalf of banks or other financial institutions in Anguilla, Antigua and Barbuda, Aruba, Bahamas, Barbados, Belize, Bermuda, British Virgin Islands, Cayman Islands, Cook Islands, Costa Rica, Cyprus, Dominica, Gibraltar, Grenada, Guernsey/Sark/Alderney, Hong Kong, Isle of Man, Jersey, Latvia, Liechtenstein, Luxembourg, Malta, Nauru, Netherlands Antilles, Panama, Samoa, St. Kitts and Nevis, St. Lucia, St. Vincent and the Grenadines, Singapore, Switzerland, Turks and Caicos, and Vanuatu. Where the identities of the taxpayers are yet not known, no greater specificity can be expected in defining the group or class of persons. *Bisceglia*, 420 U.S. at 150 ("It would seem elementary that no meaningful investigation of such events could be conducted if the identity of the persons involved must first be ascertained .... [I]f the Internal Revenue Service is unable to issue a summons to determine the identity of such persons, the broad inquiry authorized by § 7601 would be frustrated in this class of cases.")

        The summons requires PayPal to provide all account and transaction records of any PayPal account where any person or entity associated with the account has or had an address or telephone number in the United States, or a social security number, and where any source or destination of account funds at any time during the period January 1, 1999, through December 31, 2004, was a bank account at or a payment card (including credit, charge, or debit cards) issued by a financial institution in the specified jurisdictions. The summons also requires PayPal to provide records related to certain payment card numbers provided by the IRS. These payment card numbers will be those obtained from the previous "John Doe" summonses issued to MasterCard and VISA, but for which the holders of these cards have not yet been identified. Excluded from the scope of the summons are all cardholders previously identified by the Internal Revenue Service as a result of the earlier "John Doe" summonses.

B. **Reasonable Basis Exists for the Belief That the Unknown Persons May Fail, or May Have Failed to Comply with the Internal Revenue Laws**

With respect to the second requirement, set forth in Section 7609(f)(2), the Declaration of Revenue Agent Kallenberg reflects a reasonable basis for believing that the unknown persons whose identities are sought by the summonses may fail, or may have failed, to comply with one or more provisions of the internal revenue laws.

In the first instance, money transfers between the United States and offshore tax haven and financial privacy jurisdictions inherently are reasonably suggestive of tax avoidance, given that tax avoidance is frequently the purpose for the use of banks in offshore tax haven or financial privacy jurisdictions and that the secrecy and confidentiality purportedly accorded banking transactions by such jurisdictions facilitate tax evasion. In *United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302, 306 (3d Cir. 1981), the court held that the "reasonable basis" test had been met based upon a revenue agent's testimony that barter transactions of the type arranged by the Pittsburgh Trade Exchange were "inherently susceptible to tax error." In *United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir. 1994), the court held that the mere payment for legal services with large amounts of cash is a reasonable basis for the issuance of a "John Doe" summons. Likewise, the use of payment cards to access funds transferred by United States taxpayers to banks in the subject offshore tax haven or financial privacy jurisdictions provides a reasonable basis for the issuance of the summonses at issue.[5]

---

[5] Offshore cards do not seem to offer any advantages to United States taxpayers other than the promoted secrecy and tax considerations. Indeed, as recognized by William P. Binzel, vice-president of government relations for MasterCard International, as reported in Don Bauder, *A Credit Card Offer and Your Credit's Lousy? Don't Bite*, San Diego Union-Tribune, September 14, 1997, at I2: "people should be wary of a credit card issued offshore, he says. That's because credit cards issued in the United States have strong legal protections that are not available offshore."

**MEMORANDUM IN SUPPORT OF *EX PARTE* PETITION FOR LEAVE TO SERVE "JOHN DOE" SUMMONS**

9

In this regard, a recent law review article published in the Journal of Taxation is instructive. In *Advising a Client with Secret Offshore Accounts - Current Filing and Reporting Problems*, 91 J. Tax'n 158 (1999), Scott D. Michel, a past chair of the Committee on Civil and Criminal Tax Penalties of the ABA Tax Section, describes the following "not atypical hypothetical":

> In the spring of 1996, Richard Smith had a marvelous vacation on the tropical island of Azure. While he was there, he attended a free seminar on offshore banking and investing, where he heard about the many benefits of having an Azure bank account, including the island's strict bank secrecy laws. Smith opened an account at an Azure bank and deposited funds over the next three years. The bank invested the money and provided him with a "debit" card to use for "untraceable" cash advances and purchases. While Smith was careful to report all of his domestic income on his tax returns for 1996 and 1997, he did not disclose the existence of the Azure account or report the income earned in the account.

Mr. Michel then analyzes how the taxpayer in this hypothetical violated provisions of the Internal Revenue Code, such as failing to comply with the disclosure requirements for foreign financial accounts and willfully failing to report earnings on such accounts. Of course, implicit in the hypothetical set forth by the writer of the article, is the use of the debit card as an integral component of the tax evasion scheme.

In *Our Client has "What?" A Discussion of Undisclosed Cash Hoards, Foreign Bank Accounts, etc.*, American Law Institute - American Bar Association Continuing Legal Education, Estate Planning Techniques, SF68 ALI-ABA 491 (Feb. 22, 2001), Sherwin P. Simmons presents the following "fairly typical" problem:

> Tom and Mabel have been marrie[d] 36 years, have raised their children and had a thriving construction business in Ohio. However, about six years ago, Tom had a heart attack and was unable to maintain his construction business. As a result, he sold it and came to Florida, got a general contractor's license, and has been doing small construction projects in the bedroom communities around Miami. They advised that four years ago some of their friends told them about a money-making/tax-saving opportunity in which they were engaged. They attended a few seminars and learned that they could obtain a Visa Card from a Cayman bank,

deposit their funds with the bank and then in effect live on their Visa card charges (payment of the card charges being made through the funds deposited). This was all done through an off-shore corporation established by an affiliate of the Cayman bank which had as its officers and directors representatives of the Cayman bank. The stock of the corporation were issued in bearer form and Tom and Mabel's names were neither associated nor reflected in the corporate records. As the years passed, most all of the income from the construction business was transferred to their offshore account and neither this income nor any income earned by the offshore account was reported.

About three years ago, Tom had an unusually successful year earning $500,000 which he transferred immediately to the offshore account without reporting. He then caused the offshore corporation (or as he would put it, the offshore corporation's directors caused) the $500,000 to be transferred to a brokerage account in Miami to be invested for the benefit of the Cayman corporation. Unfortunately, recent developments in the stock market have reduced the $500,000 [stake] to about $180,000 currently. No investments have been sold, but the investment manager is giving thought to making some sales and reinvesting.

Early on, Tom's friends and neighbors started asking him what he was doing for his income inasmuch as they noticed his construction business was taking on fewer and fewer projects. He advised them what he was doing and they immediately became enthusiastic about participating. Tom agreed to assist them in making the necessary arrangements and was soon sending their checks and occasionally cash to the Cayman bank for their benefit.

As the assistance to friends and neighbors increased, Tom took note that the Cayman bank affiliate which set up the Cayman corporations for the bank's clients produced a tidy profit of $1000 per corporation. Tom learned that the establishment of a Cayman corporation was no big deal and he concluded that he could set up his own Cayman services organization and to effect the formation of the Cayman corporations for these friends and neighbors as well as other investors. As a result, Tom set up his own Cayman corporation known as Pie In The Sky Opportunities and started forming the Cayman corporations necessary to the arrangement. Tom made a fair amount of money each year in this enterprise, clearing about $1700 per corporation inasmuch as his expenses were lower than the Cayman bank's corporate affiliate's expenses.

Tom and Mabel were very happy with this relationship and were so comfortable in their enterprise that Tom gave up his construction business completely. Fortunately too, his health has improved and he and Mabel have been enjoying the good life in South Florida. Admittedly, the income reported on their tax returns which was modest would not support their lifestyle. To their good fortune, no one has raised any questions about it and their accountant simply prepares their returns with the information given to him. None of the information discloses any of the Cayman arrangements.

> Recently, a discordant note has crept into their lives. Tom and Mabel have read in the press about the IRS' successful request of a local federal court for the issuance of John Doe summonses to American Express Credit Card Company and MasterCard seeking the names of taxpayers who have arrangements through Cayman and other island banks similar to those of Tom and Mabel. Tom is not overly concerned since the IRS did not ask for Joe Doe summonses with respect to Visa cardholders, but, their general attorney thought that he should have some advice from you regarding his situation.

Mr. Simmons then discusses the filing and reporting requirements of the internal revenue laws, including the requirement that a taxpayer answer "yes" or "no" to the question: "[a]t any time during [the calendar year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account or other financial account?" Failure to truthfully respond to this question can subject the taxpayer to prosecution under 26 U.S.C. § 7206(1). Mr. Simmons notes that "[t]he failure to respond truthfully to the foreign account question is an offense separate from the omission of income from that account which itself can be punished under § 7201 as tax evasion and § 7206(1) as the filing of a false return."

The Declaration of Revenue Agent Kallenberg includes citations to court cases where taxpayers have used cards to access funds held in banks in offshore tax haven or financial privacy jurisdictions as part of schemes to evade the payment of taxes or otherwise fail to comply with the internal revenue laws. The schemes involve the transfers of funds, not reported as taxable income in federal tax returns, to these banks, and their eventual repatriation for tax-free use in the United States through the use of cards for purchases or direct access to cash withdrawals. *See, e.g., United States v. Brigham Young University*, 679 F.2d 1345, 1349-50 (10th Cir. 1982), *vacated for consideration of mootness*, 459 U.S. 1095 (1983) (prior audit experience with other contributors that had overvalued "in kind" contributions was a reasonable basis for

issuing a "John Doe" summons for the identity of all "in kind" contributors to Brigham Young University); *United States v. Kersting*, 891 F.2d 1407 (9th Cir. 1989) ("John Doe" summons enforced after district court found "the existence of at least one case in which a Tax Court found some of Kersting's programs to be abusive of the tax code." 891 F.2d at 1409. The Ninth Circuit affirmed: "There was ample basis for believing that the persons about whom records were sought had not complied with the tax law." 891 F.2d at 1412).

### C. The Identity of Persons in the Class Is Not Readily Available from Other Sources

With respect to the third and final requirement set forth in Section 7609(f)(3), the information sought (and the identity of the persons with respect to whose tax liabilities the summonses have been issued) is not readily available to the Internal Revenue Service from other sources, but is available from PayPal, Inc..

Persons in the "John Doe" class may have filed tax returns with the Internal Revenue Service, but their names are unknown, and an inspection of a particular taxpayer's return is not likely to reveal understatements or misstatements of income resulting from transactions concealed through the offshore transfers of funds or the failure to report foreign accounts. Their names cannot be obtained from the offshore banks as the subject offshore tax haven or financial privacy jurisdictions do not currently have information-exchange treaties with the United States that would allow the Internal Revenue Service to seek the requested information in connection with the pending tax investigation. MasterCard and Visa only license banks to issue their cards. Since they do not issue the cards directly, they do not maintain identifying information on the cardholders. American Express also licenses some foreign banks to issue its cards.

PayPal, Inc. will be able to provide detailed information, including the identity of the taxpayers, and other information relevant to this investigation.

As discussed below, the Internal Revenue Service, with court approval, has issued "John Doe" summonses to MasterCard, Visa, American Express, and numerous merchants in an attempt to ascertain the identities of taxpayers with payment cards issued by banks in financial privacy jurisdictions. From the information produced in response to those summonses, the Internal Revenue Service was able to identify some taxpayers with payment cards issued by banks in foreign financial privacy jurisdictions. The cardholders already identified are excluded from the scope of the summons for which authorization is sought in this case.

The records requested in the summons will identify the holders of bank accounts at, or payment cards issued by banks in, the listed jurisdictions, information which is not otherwise readily available to the Internal Revenue Service. In addition, PayPal, Inc.'s records will identify situations where United States taxpayers have the use of payment cards they have obtained under the name of an International Business Corporation, trust, or other entity in the offshore jurisdiction.

Accordingly, the requirements for service of the "John Doe" summons have been satisfied in this proceeding.

## II. COURTS HAVE APPROVED PRIOR "JOHN DOE" SUMMONSES IN THIS INVESTIGATION

In five similar types of proceedings, Courts have approved the issuance of "John Doe" summonses pertaining to United States taxpayers who had signature authority over payment cards issued by foreign financial institutions.

### A. "John Doe" Summonses to American Express and MasterCard

On October 30, 2000, the Southern District of Florida in Case No. 00-3919 CIV-JORDAN issued an order approving the service of "John Doe" summonses upon American Express and MasterCard International, Inc. ("MasterCard"). Copies of the Court's Order and of

the "John Doe" summonses are attached to the Exhibits Appendix to the Declaration of Barbara Kallenberg at Tabs 16 and 17, respectively. These summonses sought information regarding holders of American Express and MasterCard payment cards issued by or through banks or other financial institutions in Antigua and Barbuda, the Bahamas and the Cayman Islands.

### B. "John Doe" Summons to VISA International

Based on the results of the continuing analysis of information obtained from MasterCard, the Internal Revenue Service expanded the scope of the investigation. The time period was expanded to include the determination of the correct federal tax liabilities for the years ended December 31, 1999, 2000 and 2001, and the jurisdictions in which the cards were issued were expanded to include tax haven and financial privacy jurisdictions throughout the Caribbean, European and Asian/Pacific markets.

On March 27, 2002, the Northern District of California in Case No. 02-MC-49 (N.D. Cal) issued an order approving the service of a "John Doe" summons upon VISA International. Copies of the Court's Order and of the "John Doe" summons are attached to the Exhibits Appendix to the Declaration of Barbara Kallenberg at Tabs 18 and 19, respectively.

### C. Second "John Doe" Summons to MasterCard

On August 20, 2002, the Southern District of Florida in Case No. 02-22404-CIV-UNGARO-BENAGES issued an order approving the service of a second "John Doe" summons upon MasterCard International. This second summons reflected the larger time period and increased number of offshore jurisdictions than the investigation had encompassed at the time of the first "John Doe" summons. Copies of the Court's Order and of the "John Doe" summons are attached to the Exhibits Appendix to the Declaration of Barbara Kallenberg at Tabs 20 and 21, respectively.

D.   "John Doe" Summonses to Merchants

The Internal Revenue Service determined that some merchants could identify persons who used a particular card to purchase products or services from them. In an effort to identify the owner of some of the MasterCard payment cards for whom the cardholders remained unidentified, the Internal Revenue Service sought permission to serve "John Doe" summonses on particular merchants.

In 26 petitions, the Internal Revenue Service requested permission to serve "John Doe" summonses on 141 merchants. The information sought from the merchants included names and addresses associated with the transactional data previously produced by the credit card companies. Each request was granted. The table below lists the case numbers in which orders authorizing the Internal Revenue Service to serve the "John Doe" summons were issued:

| Date of Petition | Jurisdiction | Case Number |
| --- | --- | --- |
| August 2002 | USDC N.D. Cal. | 02-CV-04147 |
| August 2002 | USDC N.D. Ga. | 02-MI-254 |
| August 2002 | USDC N.D. Ill. | 02-CV-6178 |
| August 2002 | USDC N.J. | 02-4211 |
| August 2002 | USDC N.D. Tex. | 02-CV-1854L |
| August 2002 | USDC E.D. Va. | 02-MC-42 |
| August 2002 | USDC W.D. Wa. | C-02-1848 |
| October 2002 | USDC Ariz. | MC-02-0066 |
| October 2002 | USDC C.D. Cal. | 02-7965 |
| October 2002 | USDC M.D. Fla. | 02-mc-100 |
| October 2002 | USDC S.D. Fla. | 02-23032 |
| October 2002 | USDC Md. | 02-CV-3357 |
| October 2002 | USDC Minn. | 02-MC-49 |
| October 2002 | USDC E.D. Mo. | 02-MC-283 |
| October 2002 | USDC S.D. NY | M-18-304 |
| October 2002 | USDC S.D. Ohio | C-1-02-738 |
| October 2002 | USDC W.D. Tex. | A02-CA-667 |
| October 2002 | USDC W.D. Va. | 02-MC-00002 |
| October 2003 | USDC S.D. Tex. | H-03-4054 |
| October 2003 | USDC N.D. Ok. | 03-MC-28 |
| October 2003 | USDC Colo. | 03-DV-1968 |
| October 2003 | USDC W.D. Tenn. | 03-MC-26 |

| October 2003 | USDC E.D. Pa. | 03-cv-05665 |
| October 2003 | USDC Mass. | 03-MC-1031 |
| October 2003 | USDC E.D. Va. | 03-cv-142 |
| December 2003 | USDC W.D. Mi. | 03MC0140 |

### E. "John Doe" Summonses to Credomatic of Florida

In a further effort to identify the United States taxpayers holding offshore payment cards for which transactional data was obtained from the card associations, the IRS turned its attention to U.S. based third party processors of card transactions, who often maintain records on a contract basis for card issuing banks, including offshore banks.

In a similar petition to the case at bar, on September 11, 2003, the United States District Court for the Southern District of Florida in Case No. 03-22177 CIV-MARTINEZ issued an order approving the service of a "John Doe" summons upon Credomatic of Florida, Inc., a third party processor for a number of banks in tax haven or financial privacy jurisdictions. Copies of the Court's Order and of the "John Doe" summons are attached to the Exhibits Appendix to the Declaration of Revenue Agent Kallenberg at Tabs 22 and 23, respectively. The court subsequently entered an order approving service of a modified "John Doe" summons on Credomatic of Florida, Inc., on April 2, 2004. Copies of the Court's second Order and of the modified "John Doe" summons are attached to the Exhibits Appendix to the Declaration of Revenue Agent Kellenberg at Tabs 24 and 25, respectively.

### III. CONCLUSION

The summons for which the government seeks authorization meets the requirements of a "John Doe" summons. Accordingly, the Court should enter an order granting the Internal Revenue Service leave to serve a "John Doe" summons upon PayPal, Inc. in substantially the

MEMORANDUM IN SUPPORT OF *EX PARTE* PETITION FOR LEAVE TO SERVE "JOHN DOE" SUMMONS
17

| | |
|---|---|
| 1 | form as attached to the Exhibits Appendix to the Declaration of Revenue Agent Kallenberg at |
| 2 | Tab 1. |
| 3 | DATED this 13th day of October, 2005. |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |

DATED this 13th day of October, 2005.	Respectfully submitted,

KEVIN V. RYAN
United States Attorney
JAY R. WEILL
Assistant United States Attorney
Chief, Tax Division
CYNTHIA STIER
Assistant United States Attorney

_/s/_

ANTON L. JANIK, JR.
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-2558

Attorneys for the United States