KEVIN V. RYAN (CSBN 118321)
United States Attorney
JAY R. WEILL (CSBN 75434)
Assistant United States Attorney
Chief, Tax Division
CYNTHIA STIER (DCBN 423256)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7000
Facsimile: (415) 436-6758
Email: cynthia.stier@usdoj.gov

ANTON L. JANIK, JR.
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 305-2558
Facsimile: (202) 307-0054
Email:Anton.L.Janik@usdoj.gov

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF TAX LIABILITIES OF: <br><br> JOHN DOES, United States taxpayers who, during the years ended December 31, 1999 through December 31, 2004, had signature authority over bank accounts at or over MasterCard, VISA, or American Express cards issued by, through, or on behalf of banks or other financial institutions in Anguilla, <u>et al</u>. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: C 05-4167 JW <br><br><br> **UNITED STATES' SUPPLEMENTAL BRIEF IN RESPONSE TO DECEMBER 19, 2005 ORDER** |

In its December 19, 2005 Order, this Court requested that the United States provide, <u>inter alia</u>, a supplemental brief and declaration setting forth the number and percentage of U.S.

taxpayers with offshore accounts, identified through previous John Doe summonses, that it has determined have failed to comply with the internal revenue laws, on a country by country basis. The United States of America, by and through its undersigned attorneys, responds to the Court's December 19, 2005 Order as follows:

The Internal Revenue Service initiated its Offshore Credit Card Project to investigate allegations that United States taxpayers were avoiding their tax obligations by putting money in offshore accounts and using debit and credit cards ("payment cards") to repatriate the funds. Second Declaration of Barbara Kallenberg at ¶2. More than 1,200 Revenue Agents have been trained to handle these cases, and hundreds of Revenue Agents across the country are currently assigned to examinations of U.S. taxpayers. Id. At this stage of the investigation, the IRS has discovered thousands of offshore payment cards with U.S. taxpayers as their owners. Nonetheless, the total universe of all such payment card accounts, and the U.S. taxpayers who use them to avoid the internal revenue laws, has not yet been established. Id. The PayPal summons is critical to that effort.

The investigation has uncovered significant abuses of the internal revenue laws. The magnitude of these abuses is illustrated by the approximately 1300 persons who came forward under the Offshore Voluntary Compliance Initiative ("the Initiative"),[1] and admitted to underpayments of tax relating to offshore accounts. These 1300 persons used offshore payment cards or bank accounts to evade tax on over 3,700 tax returns, and have paid over to the United States Treasury approximately $270 million in tax, penalties, and interest related to their activity. Id. at ¶3. The Initiative also resulted in the discovery of 479 promoters of this tax-evasion scheme, of whom 230 were previously unknown to the IRS, and of whom 56 are located outside of the United States but promoting the scheme in the United States.

---

[1]     See Rev. Proc. 2003-11, attached hereto as Exhibit 1.

As shown on Schedule B to the proposed John Doe summons to PayPal (filed under seal on January 23, 2006, with the Declaration of Daniel Reeves), with the information it obtained in response to John Doe summonses served upon MasterCard, VISA, merchants, and third party processors, the IRS has already identified 12,896 offshore payment card accounts owned by U.S. taxpayers. Id. at ¶5. The number of U.S. taxpayers using those payment cards is a slightly lesser number, as some of the identified persons own more than one payment card. Id. The information the summons seeks from PayPal should enable the IRS to learn the names and addresses of the as yet unidentified account owners.

With respect to the Court's question as to how many U.S. taxpayers identified through the investigation have been determined to have failed to comply with any U.S. internal revenue law, the most current figures indicate that, of Offshore Credit Card Project examinations completed within this fiscal year, approximately 72% have revealed underpayments of tax associated with the use of offshore payment cards or bank accounts. Id. at 7. In addition, this investigation has uncovered accounts held by U.S. taxpayers currently undergoing criminal investigation for tax evasion[2] or civil examination or who have large tax assessments pending or in collection. Id. at ¶8. This information is routinely passed on to the IRS agents responsible for those cases. Id. However, the IRS has no effective means of tracking this use of the payment card data that would enable the United States to provide the Court an accurate number or percentage of those occasions. Id.

---

[2]      In the December 19, 2005 Order, at pg. 2, the Court states that the "reference to just eight individuals who violated tax laws" is insufficient to show that the requested summons is not a fishing expedition. The submission of evidence regarding these eight prosecutions in the first Declaration of Barbara Kallenberg, however, was merely to illustrate how U.S. taxpayers use offshore payment cards to evade U.S. taxes. Those eight cases do not represent the entirety of such prosecutions or the total number of convictions obtained. Second Declaration of Barbara Kallenberg at ¶9.

The John Doe summons the IRS seeks to serve on PayPal is no fishing expedition.  It is part of an ongoing, extensive investigation involving hundreds of IRS agents, and producing real results – hundreds of millions of dollars in previously unreported and unpaid taxes recovered for the Treasury to date.  The information the IRS has obtained through its previous John Doe summonses has confirmed their utility in discovering offshore accounts and the identity of U.S. taxpayers using those accounts to evade their tax obligations.[3]  The 18,379 payment card numbers set forth in Schedule A to the proposed summons (filed under seal on January 23, 2006, with the Declaration of Daniel Reeves), for which data is sought from PayPal, were obtained by the IRS through John Doe summonses to MasterCard and VISA served by leave of other United States District Courts, including that of the Northern District of California.  See Exhibits 18 through 21 to the [First] Kallenberg Declaration.  The information received by the IRS with respect to these 18,379 accounts is incomplete; the information from PayPal is necessary to enable the IRS to identify the persons who own the accounts which may have been used to evade United States taxes.  Moreover, the IRS expects the information it will receive in response to this summons should enable it to discover the identity of the owners of the 18,379 cards, as well as to learn the names of additional U.S. taxpayers who have used offshore accounts in connection with failing to comply with any provision of the internal revenue laws.

The United States has satisfied the requirements of Section 7609(f) of the Internal Revenue Code for approval of the John Doe summons to PayPal:  (1) the summons relates to an ascertainable group or class of persons – United States taxpayers who had signatory authority over offshore payment cards or bank accounts; (2) as shown by the evidence submitted with the

---

[3]     Historically, offshore tax avoidance and evasion was occasionally discovered in the course of an audit or from information received from an informant or law enforcement source.  Prior to the Offshore Credit Card Project, the Internal Revenue Service had no systematic method of identifying United States taxpayers engaged in offshore activity and, accordingly, identified few persons so engaged.  Declaration of Daniel Reeves, filed January 23, 2006 at ¶7.

Petition and this Supplemental Brief, there is a reasonable basis for believing that this group or class of persons may fail, or may have failed, to comply with provisions of the internal revenue laws; and (3) the information sought by the summons is not readily available from other sources but is possessed by PayPal.

**CONCLUSION**

For the foregoing reasons, as well as those discussed in the Memorandum in Support of Ex Parte Petition for Leave to File John Doe Summons, this Court should enter an order granting the Internal Revenue Service leave to serve a John Doe summons upon PayPal, Inc. in substantially the form as attached to the Exhibits Appendix to the [First] Declaration of Revenue Agent Kallenberg at Tab 1.

DATED this 30th day of January, 2006.

Respectfully submitted,
KEVIN V. RYAN
United States Attorney
JAY R. WEILL
Assistant United States Attorney
Chief, Tax Division
CYNTHIA STIER
Assistant United States Attorney


/s/ Anton L. Janik, Jr.
ANTON L. JANIK, JR.
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-2558

Attorneys for the United States

# EXHIBIT 1

Part III - Administrative, Procedural, and Miscellaneous

Offshore Voluntary Compliance Initiative

Rev. Proc. 2003-11

SECTION 1.  PURPOSE

.01  This revenue procedure describes the Internal Revenue Service's Offshore Voluntary Compliance Initiative for taxpayers that have underreported their United States income tax liability through financial arrangements that in any manner rely on the use of offshore payment cards (including credit, debit, or charge cards) issued by banks in foreign jurisdictions or offshore financial arrangements (including arrangements with foreign banks, financial institutions, corporations, partnerships, trusts, or other entities). This revenue procedure applies to tax years ending after December 31, 1998, and to tax years ending before that date to the extent provided in section 8 of this revenue procedure.

.02  The Service has determined that some taxpayers have used offshore payment cards or offshore financial arrangements to avoid United States income taxes.  The Offshore Voluntary Compliance Initiative described in this revenue procedure affords taxpayers that have used these devices an opportunity to avoid certain penalties that would otherwise apply.

SECTION 2.  SCOPE OF THE OFFSHORE VOLUNTARY COMPLIANCE INITIATIVE

.01  With respect to unreported income or false deductions associated with the use of offshore payment cards or offshore financial arrangements, the Service:

(1) will not impose the civil fraud penalty under section 6663, the fraudulent failure to file penalty under section 6651(f), and information return civil penalties for failure to comply with sections 6035, 6038, 6038A, 6038B, 6038C, 6039F, 6046, 6046A, and 6048; and

(2) will, in appropriate circumstances, impose the delinquency penalty under section 6651, the accuracy–related penalty under section 6662, or both penalties against taxpayers that participate in the Offshore Voluntary Compliance Initiative.

.02  The Financial Crimes Enforcement Network (FinCEN) will not impose civil penalties for failure to timely file a Report of Foreign Bank and Financial Accounts (FBAR) against eligible taxpayers that participate in the Offshore Voluntary Compliance Initiative.  For more information, see FinCEN's website at www.fincen.gov and look under Regulatory/BSA Guidance.

.03  The Service will treat the request to participate in the Offshore Voluntary Compliance Initiative as a request to make a voluntary disclosure pursuant to its Voluntary Disclosure Practice as described in IR-2002-135, Dec. 11, 2002.  See also Treasury Directive 15-41, dated December 1, 1992 (delegating to the Service the authority to investigate the criminal FBAR penalty).

.04  Any contact or communication by the Service with a taxpayer regarding the taxpayer's request to participate in the Offshore Voluntary Compliance Initiative is not an examination of books and records for purposes of section 7605(b) or Rev. Proc. 94-68, 1994-2 C.B. 803.  The Service may audit the returns of any taxpayer that participates in the Offshore Voluntary Compliance Initiative, and may propose adjustments for items that are not resolved under the Offshore Voluntary Compliance Initiative.

SECTION 3.  APPLICATION PROCESS

.01  Taxpayers that want to participate in the Offshore Voluntary Compliance Initiative must, on or before April 15, 2003, send a written request to participate in the Offshore Voluntary Compliance Initiative to the National Offshore Voluntary Compliance Initiative Coordinator.  Taxpayers may send the written request via the United States Postal Service to P.O. Box 480, Bensalem, PA 19020; by private delivery service to 11601 Roosevelt Blvd., Philadelphia, PA 19154, Attn.: DP S6005; or by email to VCI@irs.gov.  The written request must:

(1) state that the taxpayer requests to participate in the Offshore Voluntary Compliance Initiative and is a taxpayer eligible to participate in the program, as described in section 4 of this revenue procedure;

(2) state the taxpayer's name, taxpayer identification number, current address, and daytime telephone number;

(3) state the name and employer identification number of any entity (including but not limited to corporations, partnerships, trusts, and estates) that the taxpayer caused to use offshore payment cards or offshore financial arrangements, or that was the source of funds that the taxpayer caused to be transferred to a foreign jurisdiction;

(4) state the name and office location of any Service official whom the taxpayer has previously contacted about making a voluntary disclosure; and

(5) include complete information regarding the taxpayer's introduction to offshore payment cards and offshore financial arrangements, including the following:

(a) the names, addresses, and telephone numbers of any parties who promoted or solicited the taxpayer's use of offshore payment cards or offshore financial arrangements;

(b) if known to the taxpayer, the names, addresses, and telephone numbers of any parties who advised or assisted the promoters or solicitors in marketing offshore payment cards or offshore financial arrangements; and

(c) all promotional materials, transactional materials, and other related correspondence and documentation that the taxpayer at any time received regarding offshore payment cards or offshore financial arrangements. Taxpayers that send a written request to participate in the Offshore Voluntary Compliance Initiative by email to VCI@irs.gov must send these materials by mail or private delivery service (to the addresses provided in subsection .01 above) within five days of the email. These taxpayers should include with the materials a copy of the email sent to VCI@irs.gov.

SECTION 4.  TAXPAYERS THAT ARE ELIGIBLE TO PARTICIPATE IN THE OFFSHORE VOLUNTARY COMPLIANCE INITIATIVE

.01  A taxpayer that has used offshore payment cards or offshore financial arrangements is eligible to participate in the Offshore Voluntary Compliance Initiative if the taxpayer meets the following conditions:

(1) the taxpayer's written request to participate in the Offshore Voluntary Compliance Initiative is received <u>before</u>:

(a) the Service has initiated a civil examination or criminal investigation of the taxpayer, or has notified the taxpayer that it intends to commence such an examination or investigation;

(b) the Service has received information from a third party (e.g., informant, other governmental agency, or the media) alerting the Service to the specific taxpayer's noncompliance;

(c) the Service has initiated a civil examination or criminal investigation that is directly related to the specific liability of the taxpayer; or

(d) the Service has acquired information directly related to the specific liability of the taxpayer from a criminal enforcement action (e.g., search warrant, grand jury subpoena);

(2) the taxpayer has not promoted, solicited, or, in any way, facilitated the participation of others (other than members of the taxpayer's immediate family, or of individuals from whom the taxpayer did not receive compensation of more than a nominal amount) in arrangements to avoid taxation by using offshore payment cards, offshore financial arrangements, or any other abusive transaction, domestic or offshore, such as arrangements based on arguments refuted by the Service in The Truth About Frivolous Tax Arguments found at www.irs.gov/pub/irs-utl/friv_tax.pdf;

(3) during the years in which the taxpayer seeks to participate in the Offshore Voluntary Compliance Initiative, the taxpayer has not derived income from illegal sources, such as income from drug trafficking; and

(4) during the years in which the taxpayer seeks to participate in the Offshore Voluntary Compliance Initiative, the taxpayer has not used the offshore payment cards or offshore financial arrangements to support or, in any way, facilitate illegal activities not related to taxes.

SECTION 5.  ACKNOWLEDGMENT OF THE TAXPAYER'S REQUEST TO PARTICIPATE IN THE OFFSHORE VOLUNTARY COMPLIANCE INITIATIVE

.01  The Service will acknowledge receipt of the taxpayer's written request to participate in the Offshore Voluntary Compliance Initiative within 30 calendar days of receipt of the request.  In its acknowledgment, the Service will advise whether the taxpayer has been preliminarily determined to be eligible to participate in the Offshore Voluntary Compliance Initiative or has been determined to be ineligible to participate in the Offshore Voluntary Compliance Initiative.  A preliminary determination of eligibility will not prevent the Service from later determining that the taxpayer is not eligible to participate in the Offshore Voluntary Compliance Initiative due to a failure to comply with the conditions of section 4.01(2), (3), or (4), section 6, or section 7 of this revenue procedure.

SECTION 6.  ADDITIONAL REQUIREMENTS THAT A TAXPAYER MUST
SATISFY AFTER THE SERVICE PRELIMINARILY DETERMINES THAT THE
TAXPAYER IS ELIGIBLE TO PARTICIPATE IN THE OFFSHORE VOLUNTARY
COMPLIANCE INITIATIVE

.01  Within 150 calendar days of the date of the letter informing the taxpayer that

the Service has preliminarily determined that the taxpayer is eligible to participate in the

Offshore Voluntary Compliance Initiative, the taxpayer must send the following material

to the National Offshore Voluntary Compliance Initiative Coordinator, via the United

States Postal Service to P.O. Box 480, Bensalem, PA 19020, or by private delivery

service to 11601 Roosevelt Blvd., Philadelphia, PA 19154, Attn.: DP S6005:

(1) copies of original and amended federal income tax returns for tax periods

ending after December 31, 1998, that the taxpayer previously filed;

(2) copies of any powers of attorney (Forms 2848) granted by the taxpayer with

respect to tax years in which the taxpayer requests to participate in the Offshore

Voluntary Compliance Initiative;

(3) descriptions of offshore payment cards and foreign and domestic accounts of

any kind (including the name and address of the bank or financial institution, the account

number, and the date the account was opened), and descriptions of foreign assets in

which the taxpayer has or had any ownership or beneficial interest or that are or were

controlled by the taxpayer (i.e., the taxpayer has or had the practical ability to direct or

influence the financial transactions or affairs of an account or entity, or the use or

disposition of an asset, whether this ability was exercised directly or indirectly through a

nominee, agent, power of attorney, letter of directions, letter of wishes, or any other

device whatsoever) at any time after December 31, 1998;

(4) descriptions of entities of any kind (including but not limited to corporations,

partnerships, trusts, and estates) and any nominees through which the taxpayer exercised

control over foreign funds, assets, or investments at any time after December 31, 1998;

(5) descriptions of the source of any foreign funds, assets, or investments owned or controlled by the taxpayer at any time after December 31, 1998;

(6) all promotional materials, transactional materials, and other related correspondence and documentation regarding offshore payment cards or offshore financial arrangements received subsequent to the date the taxpayer submits the request to participate in the Offshore Voluntary Compliance Initiative;

(7) complete and accurate amended or delinquent original federal income tax returns of the taxpayer for all tax years ending after December 31, 1998, which are supported by an explanation of previously unreported income or incorrectly claimed deductions or credits (whether or not related to offshore payment cards or offshore financial arrangements);

(8) complete and accurate amended or delinquent original information returns required by sections 6035, 6038, 6038A, 6038B, 6038C, 6039F, 6046, 6046A, and 6048 for which the taxpayer requests relief from penalties; and

(9) complete and accurate FBARs for tax years ending after December 31, 1998. (FBAR forms are available by contacting FinCEN at 800-949-2732 and on FinCEN's website, www.fincen.gov.)

.02  Upon the Service's request, and within the period of time allowed by the Service in its request, the taxpayer must provide documentation of the matters described in section 6.01 paragraphs (3) through (5) of this revenue procedure, and information regarding all transactions conducted through the foreign accounts and entities.

.03  Upon the Service's request, and within the period of time allowed by the Service in its request, the taxpayer must provide executed consents or special consents to extend the time to assess tax for years that the taxpayer requests to participate in the Offshore Voluntary Compliance Initiative.

.04  At the time the taxpayer files the required amended or delinquent original returns, the taxpayer must fully pay the tax liabilities, including applicable penalties

under sections 6651 and 6662, and interest, or make other financial arrangements acceptable to the Service for all years covered by the Offshore Voluntary Compliance Initiative.  In addition, the taxpayer must fully pay all other unpaid, previously assessed liabilities, or make other financial arrangements acceptable to the Service.  For purposes of this revenue procedure, other financial arrangements acceptable to the Service shall include the completion and submission of complete financial statements to the National Offshore Voluntary Compliance Initiative Coordinator at the time amended or delinquent returns are filed in compliance with section 6.01 of this revenue procedure.  A complete financial statement shall include all assets, domestic and foreign, in which the taxpayer has an ownership or beneficial interest or over which the taxpayer has control, whether directly or indirectly, through a nominee, agent, power of attorney, letter of directions, letter of wishes, or any other device.

## SECTION 7.  FINAL DETERMINATION THAT A TAXPAYER IS ELIGIBLE TO PARTICIPATE IN THE OFFSHORE VOLUNTARY COMPLIANCE INITIATIVE

.01  After an eligible taxpayer meets the requirements of sections 3 and 6 of this revenue procedure, the taxpayer must execute a specific matters closing agreement in the form appended to this revenue procedure as Exhibit 1.  In the closing agreement, the taxpayer must waive all defenses to the assessment and collection of tax, penalties, and interest under the Offshore Voluntary Compliance Initiative, including any defenses based on the expiration of the period of limitations on assessment or collection.  The taxpayer must also agree that the failure to disclose information that would make the taxpayer ineligible to participate in the Offshore Voluntary Compliance Initiative, or the failure to fully and accurately provide the information required by sections 3 and 6 of this revenue procedure, constitutes a misrepresentation of a material fact under section 7121.

.02  Execution of the closing agreement by the Commissioner constitutes a final determination under section 7121 that the taxpayer is eligible to participate in the Offshore Voluntary Compliance Initiative.

SECTION 8.  TREATMENT OF TAX YEARS ENDING PRIOR TO JANUARY 1, 1999

.01  For cases resolved under the Offshore Voluntary Compliance Initiative, the Service does not intend to solicit or secure information concerning an eligible participating taxpayer's federal income tax liabilities for tax years ending prior to January 1, 1999.  Eligible participating taxpayers, however, must provide information about all aspects of the taxpayer's involvement with offshore payment cards or offshore financial arrangements, regardless of the year in which such activities began.

.02  If it comes to the Service's attention that substantial tax avoidance occurred in tax years ending prior to January 1, 1999, the Service reserves the right to examine such prior tax years and to assess tax, penalties, and interest, if the period of limitations on assessment and collection for those years is open.  If any eligible participating taxpayer files complete and accurate amended or delinquent original returns for tax years ending prior to January 1, 1999, which are supported by an explanation of previously unreported income or incorrectly claimed deductions or credits (whether or not related to offshore payment cards or offshore financial arrangements), the Service will resolve the taxpayer's liability for those years for tax, penalties, and interest on the same basis that the Service will resolve liabilities for tax years ending after December 31, 1998, under the Offshore Voluntary Compliance Initiative.

SECTION 9.  EFFECTIVE DATE

.01  This revenue procedure is effective on January 14, 2003.

SECTION 10.  PAPERWORK REDUCTION ACT

.01  The collection of information contained in this revenue procedure has been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act (44 U.S.C. § 3507) under control number 1545-1822.  An agency may not conduct or sponsor, and a person is not required to respond to, a

collection of information unless the collection of information displays a valid OMB control number.

.02 The collection of information in this revenue procedure is in Section 3 (APPLICATION PROCESS), Section 6 (ADDITIONAL REQUIREMENTS THAT A TAXPAYER MUST SATISFY AFTER THE SERVICE PRELIMINARILY DETERMINES THAT THE TAXPAYER IS ELIGIBLE TO PARTICIPATE IN THE OFFSHORE VOLUNTARY COMPLIANCE INITIATIVE), Section 7 (FINAL DETERMINATION THAT A TAXPAYER IS ELIGIBLE TO PARTICIPATE IN THE OFFSHORE VOLUNTARY COMPLIANCE INITIATIVE), and Section 8 (TREATMENT OF TAX YEARS ENDING PRIOR TO JANUARY 1, 1999). This information will be used to determine whether a taxpayer is eligible for the Offshore Voluntary Compliance Initiative and to apply the terms of the initiative. This information will also further the Service's understanding of how offshore payment cards and offshore financial arrangements have been promoted and solicited. Collection of the information described in this revenue procedure is required to obtain the benefits of the Offshore Voluntary Compliance Initiative. The likely respondents are individuals, corporations, partnerships, trusts, and other entities.

.03 The estimated total annual reporting burden is uncertain but estimated to be at least 100,000 hours. The estimated annual burden per respondent varies from 25 hours to 75 hours, depending on individual circumstances, with an estimated average of 50 hours. The number of respondents is uncertain but estimated to be in the thousands. The estimated frequency of responses is at least one per respondent.

.04 Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally tax returns and tax return information are confidential, as required by 26 U.S.C. § 6103.

SECTION 11. CONTACT INFORMATION

.01  The principal author of this revenue procedure is Stuart Spielman of the Office of the Associate Chief Counsel (Procedure and Administration).  For further information regarding this revenue procedure, please contact the Office of the National Offshore Voluntary Compliance Initiative Coordinator at 215-516-3537 (not a toll-free number) or visit [www.irs.gov](www.irs.gov).

EXHIBIT 1

Department of the Treasury—Internal Revenue Service

## Closing Agreement On Final Determination
## Covering Specific Matters

Under section 7121 of the Internal Revenue Code:

_____
(Taxpayer's name)

_____
(Taxpayer's address and identifying number)

WHEREAS, Taxpayer has underreported federal income taxes for [specify tax years] through financial arrangements that in some manner rely on the use of offshore payment cards (including credit, debit, or charge cards) issued by banks in foreign jurisdictions or offshore financial arrangements (including arrangements with foreign banks, financial institutions, corporations, partnerships, trusts, or other entities);

WHEREAS, Taxpayer has requested to participate in the Offshore Voluntary Compliance Initiative, which is described in Revenue Procedure 2003-11; and

WHEREAS, Taxpayer has agreed to all the terms and conditions of the Offshore Voluntary Compliance Initiative.

NOW IT IS HEREBY DETERMINED AND AGREED FOR FEDERAL TAX PURPOSES THAT:

1. For [Year 1], Taxpayer used offshore payment cards or offshore financial arrangements to avoid reporting income in the amount of [specify amount] and to claim false deductions in the amount of [specify amount]. **[Insert only if applicable:** For Year 1, Taxpayer had additional unreported income in the amount of [specify amount] and false deductions in the amount of [specify amount.]] For [Year 2], Taxpayer used offshore payment cards or offshore financial arrangements to avoid reporting income in the amount of [specify amount] and to claim false deductions in the amount of [specify amount]. [**Insert only if applicable:** For Year 2, Taxpayer had additional unreported income in the amount of [specify amount] and false deductions in the amount of [specify amount]] [Continue in this manner for all tax years.]

2. For [Year 1], penalties under sections [indicate sections] of the Internal Revenue Code apply to underpayments attributable to the unreported income and false deductions. For [Year 2], penalties under sections [indicate sections] apply to underpayments attributable to the unreported income and false deductions. [Continue in this manner for all tax years.]

3. Interest is due as provided by law on Taxpayer's underpayments of tax and penalties.

4. Taxpayer waives all defenses to the assessment and collection of tax, penalties, and interest described in the preceding paragraphs, including any defense based on the expiration of the period of limitations on assessment or collection.

5. This closing agreement does not prevent the Internal Revenue Service from auditing Taxpayer for [specify tax years] and proposing adjustments unrelated to offshore payment cards or to offshore financial arrangements. This closing agreement also does not prevent the Service from proposing adjustments related to offshore payment cards or to offshore financial arrangements if, subsequent to the date that this closing agreement is executed, the Service determines that

Taxpayer, contrary to the provisions of Revenue Procedure 2003-11, failed to fully and accurately provide the information and materials required by sections 3 and 6 of the revenue procedure. Any examination or determination under this paragraph 5 does not constitute a second examination for purposes of section 7605(b) of the Code or Rev. Proc. 94-68, 1994-2 C.B. 803.

6. Failure to disclose information that would make Taxpayer ineligible to participate in the Offshore Voluntary Compliance Initiative or failure to fully and accurately provide the information or material required by sections 3 and 6 of Revenue Procedure 2003-11 constitutes a misrepresentation of a material fact under section 7121 of the Code.

# Instructions

This agreement must be signed and filed in triplicate. (All copies must have original signatures.) The original and copies of the agreement must be identical. The name of the taxpayer must be stated accurately. The agreement may relate to one or more years.

If an attorney or agent signs the agreement for the taxpayer, the power of attorney (or a copy) authorizing that person to sign must be attached to the agreement. If the agreement is made for a year when a joint income tax return was filed by a husband and wife, it should be signed by or for both spouses. One spouse may sign as agent for the other if the document (or a copy) specifically authorizing that spouse to sign is attached to the agreement.

If the fiduciary signs the agreement for a decedent or an estate, an attested copy of the letters testamentary or the court order authorizing the fiduciary to sign, and a certificate of recent date that the authority remains in full force and effect must be attached to the agreement. If a trustee signs, a certified copy of the trust instrument or a certified copy of extracts from that instrument must be attached showing:

(1) the date of the instrument;

(2) that it is or is not of record in any court;

(3) the names of the beneficiaries;

(4) the appointment of the trustee, the authority granted, and other information necessary to show that the authority extends to Federal tax matters; and

(5) that the trust has not been terminated, and that the trustee appointed is still acting. If a fiduciary is a party, Form 56, Notice Concerning Fiduciary Relationship, is ordinarily required.

If the taxpayer is a corporation, the agreement must be dated and signed with the name of the corporation, the signature and title of an authorized officer or officers, or the signature of an authorized attorney or agent. It is not necessary that a copy of an enabling corporate resolution be attached.

Use additional pages if necessary, and identify them as part of this agreement.

Please see Revenue Procedure 68-16, C.B. 1968-1, page 770, for a detailed description of practices and procedures applicable to most closing agreements.

This agreement is final and conclusive except:
(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;
(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code section 7122) notwithstanding any other law or rule of law; and
(3) if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

**By signing, the above parties certify that they have read and agreed to the terms of this document.**

Your signature _____

Date Signed _____

Spouse's signature (if a joint return was filed) _____

Date Signed _____

Taxpayer's representative _____

Date Signed _____

Taxpayer (other than individual)

_____

        By _____

        Date Signed _____

        Title _____

Commissioner of Internal Revenue

        By _____

        Date Signed _____

        Title _____